**Weeland L. HYDE, Plaintiff–Appellant,**

**v.**

**HIBERNIA NATIONAL BANK IN JEFFERSON PARISH and Credit Bureau Services—New Orleans, d/b/a Chilton Corporation, Defendants–Appellees.**

**No. 88–3292**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1988.

Vallerie Oxner, New Orleans, La., for Hyde.

Harry A. Rosenberg, M. Nan Alessandra, New Orleans, La., for Credit Bureau Services.

J. Paul Demarest, Edward J. Rivera, New Orleans, La., for Hibernia Nat. Bank.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is when the statutory limitations provisions of the Fair Credit Reporting Act begin to run. We hold that the limitations period for a suit asserting negligence commences when a report issued to a user causes injury to the consumer for whose protection the Act was adopted and that the limitations period for a suit asserting intentional violation of the Act begins at the same time or, if the consumer is not aware of the issuance of the report, when the consumer later discovers it. Accord-

ingly, we vacate a summary judgment and remand for further proceedings in which these principles can be applied.

## I.

In November, 1983, Weeland Hyde received a credit report from the Credit Bureau Services–New Orleans, d/b/a Chilton Corporation, indicating that Hyde had failed to pay Hibernia National Bank $452 on an outstanding commercial loan, and that Hibernia, in 1980, had charged that amount to "P & L", writing it off as a bad debt. After receiving this credit report, Hyde telephoned Chilton to state that the information relating to the Hibernia loan was incorrect. Chilton informed Hyde that to question credit information under the Fair Credit Reporting Act he would have to lodge a written request. Hyde chose not to do so because, as he testified in his deposition, "it really wasn't that important to me at the time."

Three years passed. In 1986, Hyde applied for a Diner's Club credit card and was turned down. He then wrote to Chilton for the first time, disputing the credit information that had been submitted by Hibernia, and asked for a copy of his credit report. Chilton sent him a copy of it in December, 1986. It contained exactly the same credit information that had been submitted by Hibernia in 1980 and reported to Hyde in 1983.

In July, 1987, Hyde sued Hibernia and Chilton, alleging that they had intentionally violated the Fair Credit Reporting Act. The district court apparently also understood the complaint to assert that Hibernia and Chilton had negligently violated the Act. Hyde also asserted pendent state-law claims. Each of the defendants filed a motion for summary judgment against Hyde on the basis that the statute of limitations barred assertion of the federal claims.

1.  15 U.S.C. § 1681(b) (1982).

2.  Id. at § 1681b.

3.  Id. at § 1681i.

4.  Id. at § 1681i(a).

The district court held that, under what it called the "occurrence rule," the federal negligence claims were time-barred because the alleged wrongful report was issued more than two years before suit was brought. Under the alternative "discovery rule," the claims alleging intentional violation of the Act were also barred because suit had not been brought until more than two years after Hyde had discovered the allegedly willful misrepresentation. Accordingly, the district court dismissed the federal claims, and then dismissed Hyde's pendent state-law claims for want of federal jurisdiction.

## II.

Congress enacted the Fair Credit Reporting Act in 1970 to require that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...."[1] The statute imposes significant responsibilities on credit reporting agencies. It limits the uses for which a consumer credit report may be released[2] and provides a flow chart for challenging the accuracy of a report.[3] A consumer may, by written notice to the reporting agency, challenge any information contained in his file. If he does so, the agency must reinvestigate the credit report.[4] If the information is then confirmed, the consumer may file a statement of a dispute, and any disputed information will be noted as such in forthcoming reports.[5] The agency must also inform the consumer of any information deleted from his report.[6]

The Act requires each credit reporting agency to maintain "reasonable procedures" and to exert a "reasonable effort" in reporting and verifying consumer infor-

5.  Id. at § 1681i(b)–(c).

6.  Id. at § 1681i(d).

mation,[7] but it does not authorize a suit simply to require the credit reporting agency to correct an erroneous credit report. Instead, it permits any consumer who is injured by the negligent failure of a reporting agency to comply with any requirement imposed by the Act to sue for the actual damages sustained by the consumer as a result of the failure, together with the cost of the action and reasonable attorney's fees.[8] An agency that willfully fails to comply with any requirement imposed by the Act is liable in addition for punitive damages.[9]

The Act vests jurisdiction of such actions in federal courts.[10] It requires that any action to enforce any liability created by the Act be brought "within two years *from the date on which liability arises,* except that where a defendant has materially and willfully misrepresented any information ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation."[11]

### III.

The FCRA statute of limitations must be read against the background of principles applicable to the limitation of actions for tort liability. Such statutes of limitations do "not usually begin to run until the tort is complete."[12] Actual loss or damage to the interests of another is, at least, a component of the cause of action based on negligence,[13] and, in the absence of some other measure of damages, of intentional wrongs as well. Proof of damage is thus an essential part of the plaintiff's case. Nominal damages to vindicate a technical right cannot be recovered unless actual loss has occurred.[14]

The view has been expressed that the FCRA two-year period for actions based on negligence might begin to run from any of four dates:

(1) When the event that would trigger the limitations period under state law occurred;

(2) When the agency committed the act of negligence, that is, in the statutory language, when it failed to employ "reasonable procedures;"[15]

(3) When the report was first received by or made known to the consumer;[16] or

(4) When the agency issued the erroneous report to a user.[17]

Adopting a state-by-state approach would produce anomalous results in the application of a federal law that provides its own statute of limitations and is intended to have uniform national application. Although we adopted a state-by-state approach in *Wilson v. Retail Credit Co.,*[18] that case concerned defamation in a credit report, not a violation of the Act.

---

**7.** Id. at §§ 1681(b) and 1681e(a).

**8.** Id. at § 1681o.

**9.** Id. at § 1681n.

**10.** Id. at § 1681p.

**11.** (Emphasis added). 15 U.S.C. § 1681p reads in full:

"An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy or in any other court of competent jurisdiction, within two years from the date on which liablity arises, except that where a defendant has materially and willfully misrepresented any information required under the subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation."

**12.** Restatement of Torts § 899 Comment C.

**13.** Prosser and Keaton on Torts, § 30 at 165 (5th Edition 1984).

**14.** Ibid.

**15.** 15 U.S.C. §§ 1681(b) and 1681e(a). *See also Koropoulos v. Credit Bureau, Inc.* 734 F.2d 37, 41–42 (D.C.Cir.1984).

**16.** Davis, Solving Statute of Limitations Problems Under Fair Credit Reporting Act, 18 Ind.L. Rev. 507, 514 (1985).

**17.** See, e.g. *Lawhorn v. Trans Union Credit Information Corp.,* 515 F.Supp. 19 (E.D.Mo.1981) (memo).

**18.** 438 F.2d 1043, 1045 (5th Cir.1971).

To commence the period with the agency's negligent procedures would start the statute before any report is issued, and hence before the consumer can even become aware of the very existence of a cause of action. Such an interpretation would obviously frustrate the purpose of the Act.

Starting the statute of limitations upon the consumer's receipt of the report would also frustrate the purpose of the damage action. A consumer may learn that a credit agency possesses erroneous information in its files, but he has no cause of action in tort against the credit agency until the agency somehow injures him. The statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information, but establishes a cause of action to redress specific injuries sustained by the consumer.

The requirement that a consumer sustain some injury in order to establish a cause of action suggests that the statute should be triggered when the agency issues an erroneous report to an institution with which the consumer is dealing. One commentator, Professor Martha Davis, has advanced this thesis,[19] drawing an analogy to the common law rule in commercial defamation cases. Professor Davis culls support from the congressional debates that emphasize the link between adverse publication and harm to the consumer.[20] The day the report is transmitted to a user is usually the date on which injury is inflicted, since that report is used by the institution as the basis for its denial of credit to the consumer. Because the tort is inchoate until the victim is injured, the date upon which the erroneous information is transmitted by the credit agency to the potential user corresponds to the date on which the limitations period for the tort begins.

When the claim is for intentional noncompliance, the period commences either from the time of injury to the consumer or from the date of the consumer's discovery of the error, whichever is later. Congress intended the discovery provision to extend the period within which suit might be filed for an intentional tort beyond the two-year period provided for negligence. That purpose is manifested in the Senate–House Conference Committee Report on the Act which states:[21]

> The House amendment to section 618, which was agreed to by the conferees, would stop the statute of limitations from running, where the defendant has willfully misrepresented any information required under the new title which is material to the establishment of the defendants' liability, until discovery by the individual of the misrepresentation.

## IV.

The final issue is whether, if the 1983 report did cause damage to Hyde and the statute of limitations has run for that cause of action, Hyde is barred from seeking damages for the later issuance of the same report. Hyde contends that, even if he was injured in 1983, his cause of action nonetheless survives because Chilton's violation of the Act was continuous.

In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,[22] the Supreme Court found a statute of limitations no bar to suit when a "continuing violation ... inflicted continuing and accumulated harm" on a party. Chilton's second issuance of the report was not, however, a continuing act, like the constant repetition of a nuisance, but was a discrete event. In defamation cases involving similar discrete acts of re-

**19.** *Davis, supra,* 18 Ind.L.R. at 514.

**20.** *Ibid.*

**21.** Conference Report No. 1587, 91st Cong.2d Sess. reporting on H.B. 91–1587, 1970 U.S.Code & Ad.News 4394, 4411, 4416.

**22.** 392 U.S. 481, 88 S.Ct. 2224, 2236 n. 15, 20 L.Ed.2d 1231 (1968). *See also Polin v. Dun and Bradstreet, Inc.,* 511 F.2d 875, 878 (10th Cir. 1975); *Baker v. F & F Investment,* 420 F.2d 1191, 1200 (7th Cir.1970); *Katz v. N.L.R.B.,* 196 F.2d 411, 415 (9th Cir.1952); *Postow v. Oriental Building Assoc.,* 390 F.Supp. 1130, 1139 (D.C. Dist.1975). *But see Baldwin v. Loew's Inc.,* 312 F.2d 387, 390 (7th Cir.1963); *Emich Motors Corp. v. General Motors Corp.,* 229 F.2d 714, 719 (7th Cir.1956).

publication of the same material, most courts have rejected the "continuing violation" theory, adopting instead a "single publication rule"[23] and considering the republication of the same defamatory material to constitute "but one tort."[24] In addition to "considerations of convenience and administration," the single-publication rule is justified on the ground that the republications are "of passing interest and unlikely to cause substantial harm after their initial impact upon the reading public."[25]

■ We do not find the rationale underlying the single-publication rule applicable to the Fair Credit Reporting Act. The major harm may, indeed, result from the first transmission of defamatory material to an institution, but the confidential nature of a credit report necessarily means that each new issuance results in a distinct and separate injury. The Restatement of Torts (2d) § 577A appears to diverge from the single-publication rule in its Comment on subsection (1) when it states that "each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." We adopt the Restatement's formulation and conclude that each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies. The failure of the consumer to mitigate his damages by filing suit when he is first injured, thus permitting a more widespread circulation of the credit information, should have a "bearing [only] on the [calculation of] damages."[26]

If Hyde was, indeed, injured in 1983, the 1983 and 1986 injuries constituted two distinct harms: Hyde would have been denied a particular credit in 1983 and denied yet another line of credit in 1986. While each injury resulted from Chilton's transmission of the same erroneous credit files, Chilton's later action inflicted a new injury on Hyde.

## V.

In its brief, the bank contends only that the FCRA statute of limitations bars an action against it, urging essentially the same reasons as those advanced by Chilton. The facts in the record before us do not indicate whether or not the Bank took any action after its initial report. Moreover, the Bank has not raised, either in the district court or in its brief to this court, any question concerning whether the FCRA creates a cause of action against it. We, therefore, reverse the summary judgment in favor of the Bank for the same reasons that require reversal of the judgment in favor of Chilton, without prejudice to any other defenses the Bank might raise on remand.

For these reasons, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

**23.** Prosser & Keaton, *Torts* (5th Ed.) § 113 at 800.

**24.** Harper & James, *The Law of Torts* (1956) § 5.16 at 395.

**25.** *Ibid.*

**26.** Prosser & Keaton, *Torts* (5th Ed.) § 113 at 800.