**William H. McANLY, Plaintiff,**

**v.**

**MIDDLETON & REUTLINGER, P.S.C., G. Kennedy Hall, Jr., Dennis D. Murrell, and Hub Frankel Company, Defendants.**

**No. Civ.A. 3:99–CV–139–H.**

United States District Court, W.D. Kentucky at Louisville.

Dec. 10, 1999.

David B. Mour, Jeffrey A. Cross, Borowitz & Goldsmith, Louisville, KY, for plaintiff.

Richard H.C. Clay, James T. Blaine Lewis, Woodward, Hobson & Fulton, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

After learning that a law firm had obtained his credit report in September 1994, William H. McAnly sued the firm, a partner, an associate, and a client claiming damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (1994) (the "FCRA"), intrusion upon seclusion, civil conspiracy, and breach of contract. Now before the Court is Defendants' motion for judgment on the pleadings as to each of the four claims. In brief, Defendants argue that the FCRA claim is time-barred, that the intrusion upon seclusion claim is preempted, that the alleged civil conspiracy either lacks any underlying unlawful behavior or is time-barred, and that Plaintiff is not a third-party beneficiary of the firm's contract with the credit reporting agency. The Court has reviewed the memoranda and had an opportunity to carefully evaluate counsels' arguments at a conference.

The facts necessary to decide this motion are few and undisputed. At the time of the relevant events, Defendants G. Kennedy Hall, Jr., and Dennis D. Murrell were a partner and an associate, respectively, at the law firm Middleton & Reutlinger, P.S.C. ("M & R"). M & R had a written service agreement with Trans Union Corporation ("TUC"), a consumer reporting agency.[1] Under the agreement's terms, M & R could request a consumer's credit report "in connection with a business transaction involving the consumer" upon identification of the inquiry as such a business transaction request and notification to TUC of the "business purpose for such report." M & R also agreed to comply with all provisions of the FCRA and to "hold in strict confidence all information received from [TUC] and not to disclose such information, under any circumstances, to the subject of the report, or any other party."

At the urging of its client, Defendant Hub Frankel Company ("Hub"), M & R requested Plaintiff's credit report on September 16, 1994. The request failed. On September 23, 1994, M & R again requested Plaintiff's credit report; this time the report was obtained. M & R's and Hub's purpose in getting the report is unclear, and, at any rate, unimportant to Defendants' present motion. Plaintiff did not discover M & R's 1994 inquiries until some-

---

1. TUC is not a party to this action.

time in December 1998. This suit was filed February 16, 1999.

## I.

Plaintiff's FCRA claim alleges that M & R requested and obtained Plaintiff's credit report under false pretenses, a violation of 15 U.S.C. § 1681q (1994). *See Duncan v. Handmaker*, 149 F.3d 424, 426–29 (6th Cir.1998). Defendants argue that, even if the claim is otherwise valid, it was made more than four years after M & R obtained the report, clearly exceeding the FCRA's two-year statute of limitation. Plaintiff concurs in these facts, but argues that the statute of limitation must not toll until Plaintiff discovers the acts of the Defendants underlying his claim. If the Court uses such a "discovery rule," the claim is not time-barred.

The FCRA provision at issue is as follows:

### § 1681p. Jurisdiction of courts; limitation of actions

An action to enforce any liability created under [the FCRA] may be brought ... within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under [the FCRA] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under [the FCRA], the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

15 U.S.C. § 1681p (1994). As an initial matter, the Court notes the ambiguity inherent in the two-year statute of limitation running "from the date on which the liability arises." Liability could arise on the date of the Defendants' violation, or it could arise when injury is inflicted upon the Plaintiff. The statute does not define the date with any particularity. In other respects as well, this provision is no model of clarity.

██ Regardless of the inherent linguistic uncertainty, the federal courts historically apply principles of equitable tolling to statutes of limitation when discovery of the violation comes only after the statute would have run. The Supreme Court "long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (*quoting Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)). "This equitable doctrine is read into every federal statute of limitation. If [a federal statute] had an explicit statute of limitation for bringing suit ..., the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception ... which is the basis of [the] suit." *Id.* The Court finds that this equitable tolling doctrine applies squarely to the FCRA and to Defendants' alleged violation of it.

Defendants point the Court to the Third Circuit's decision in *Houghton v. Insurance Crime Prevention Institute*, 795 F.2d 322 (3d Cir.1986), which refused to apply equitable tolling to an FCRA violation discovered after the two-year statute had run. The *Houghton* court's refusal was based on § 1681p's "except" clause, which explicitly outlines a discovery rule for material and willful misrepresentation of information required to be disclosed to an individual.[2] "If we construe the statute as permitting us to imply a discovery exception

---

2. Both parties concede that this case is not encompassed by § 1681p's "except" clause. Though Plaintiff alleges that Defendants failed to disclose their true purpose to TUC when requesting Plaintiff's credit report, that required disclosure was to the credit reporting agency, not to an individual (*i.e.*, not to Plaintiff).

to circumstances other than the one which Congress explicitly set forth, we would be rendering superfluous the discovery exception which Congress did set forth." *Houghton,* 795 F.2d at 325 (*citing Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)). The two other circuit courts to address the issue directly have adopted the *Houghton* ruling without further analysis. *See Clark v. State Farm Fire & Casualty Ins. Co.,* 54 F.3d 669, 672–73 (10th Cir.1995); *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1181 (7th Cir.1989).[3] The opinions of these Courts of Appeals deserve considerable respect and attention, even though none is directly binding on this Court.

The Court has reviewed these opinions and, with all due respect, finds them unpersuasive. The *Houghton* court's opinion is a variation of the maxim *expressio unius est exclusio alterius,* and the Third Circuit held that, for the "except" clause to have meaning, the general discovery exception must be eliminated, even though the "equitable doctrine is read into every federal statute of limitation." *Holmberg,* 327 U.S. at 397, 66 S.Ct. 582. The Court must disagree with that reasoning and the consequent result. The only authority cited in *Houghton* is a quotation from the Supreme Court's opinion in *Andrus v. Glover. See* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The *Andrus* case concerned exceptions to a government procurement advertising statute and the statute's relationship to the Buy Indian Act. *See id.* at 612–19, 100 S.Ct. 1905. It had nothing to do with statutes of limitation or discovery

rules, and the Court's interpretation in *Andrus* created no conflicts with well-established equitable doctrines. While it is true that Congress outlined a discovery exception for one species of FCRA violations, this Court does not infer from that exception an intent to eliminate the equitable tolling doctrine altogether. To do so would deny the FCRA any meaning in cases such as the one alleged here, leaving it a toothless and inadequate tool to police the nation's credit information industry. *See Management Information Technologies, Inc. v. Alyeska Pipeline Service Co., Inc.,* Civ. A. No. 92–1730, 1993 WL 219257, at *5 (D.D.C. June 8, 1993) ("[T]he so-called 'discovery rule,' which provides for the equitable tolling of the statute of limitations in certain circumstances, is properly applied to intentional violations of the FCRA.").

■ The Third Circuit's rationale rewards violators of the act for the mere fortuity that their improper credit inquiries went undiscovered during the two years following their actions. Statutes of limitation are designed to prevent a plaintiff from sleeping on his rights once those rights accrue, not to penalize the unwitting victim of a statutory violation for his ignorance. The interpretation proposed by Defendants runs counter to these purposes, and "[s]uch an approach would be patently unfair." *Alyeska,* at *6.

In any event, Congress clearly intended that FCRA violations should be redressed. If the statute of limitation is not equitably tolled after discovery by the Plaintiff, false pretenses violations under § 1681q would often, if not usually, go unpunished. "Knowledge that one's credit report has been obtained is essential to establishing a wrongdoer's liability under the Act."

---

**3.** The Fifth Circuit has also applied § 1681p, but because the alleged violation in its case seemed to meet the statutory language in the "except" clause, that court failed to discuss or even recognize any equitable tolling issues. *See Hyde v. Hibernia Nat'l Bank in Jefferson Parish,* 861 F.2d 446, 447–50 (5th Cir.1988). Still, the *Hyde* court held "that the limitations period for a suit asserting intentional violation of the Act begins [when a report issued to a user causes injury] or, if the consumer is not aware of the issuance of the report, when the consumer later discovers it." *Id.* at 446. The *Hyde* court noted no tension between this broad discovery rule and the arguably more limited statutory exception.

*Alyeska,* at \*5. For these reasons, the Court believes that the statute of limitation does not run until the moment of Plaintiff's discovery.

■ Defendants further argue that, even if application of a discovery rule to the statute of limitation is appropriate, the statute should toll from the date on which discovery, in the exercise of due diligence, should have been made. This is an accurate statement of the discovery rule and the requirements of equitable tolling. *See Bailey,* 88 U.S. (21 Wall.) at 348. Since M & R's credit inquiry was noted on Plaintiff's TUC credit report after September 23, 1994, and since Plaintiff could have requested his own report at any time, Defendants believe he should be required to discover the inquiry on that date. The Court finds that logical reasons make this argument unpersuasive.

■ Though Plaintiff *could* have discovered the September 23, 1994, inquiry within two years of its occurrence, he had no obligation to do so. Under the FCRA, there is no affirmative duty to periodically or continuously monitor one's credit history as maintained by the several credit reporting agencies, and the Court will not impose such a duty here. The Court finds no reasonable expectation that Mr. McAnly or others similarly situated would periodically monitor their own credit history. Until his December 1998 discovery, Plaintiff had no reason to suspect that anyone had improperly acquired his credit history. Plaintiff need not spontaneously request and examine his own credit report to satisfy *Holmberg*'s requirement of "reasonable diligence." Plaintiff was not sleeping on his rights in any sense, and the two-year statute of limitation will be tolled from the date of his actual discovery of the credit inquiry.

## II.

■ Defendants argue that Plaintiff's state common law claim for intrusion upon seclusion is "preempted" by a provision of the FCRA. The relevant portions of that provision are as follows:

**(e) Limitation of Liability**

. . . no consumer may bring any action or proceeding in the nature of . . . invasion of privacy . . . with respect to the reporting of information against . . . any user of information . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (1994). Although intrusion upon seclusion is an action "in the nature of invasion of privacy," Defendants' preemption argument fails to meet the criteria outlined in the rest of the provision. First, the intrusion claim is not "based on information disclosed pursuant to 1681g, 1681h, or 1681m." No one disputes that sections 1681g and 1681h apply only to consumer reporting agencies, and none of the Defendants is such an entity. Section 1681m does apply to information users such as M & R, but it imposes no duty to disclose absent "adverse action" by the user against the consumer. There was no adverse action taken by the Defendants against the Plaintiff based on his consumer report. Second, Defendants do not have an argument under the latter basis, since the intrusion claim is not based on information disclosed by M & R to Plaintiff, nor did M & R take any adverse action against Plaintiff.

In fact, section 1681h(e) is not actually a preemption provision. Rather, it is a *quid pro quo* grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures under state tort law. It makes sense that acts required to be done by the FCRA are

immunized from state tort liability. But Plaintiff's intrusion claim is based on an allegedly *illegal* disclosure—a disclosure made under false pretenses. The facts underlying that claim are completely opposite from a disclosure *required* to be made, so section 1681h(e) is in no way implicated. *Cf.* 16 C.F.R.App. to Pt. 600—Commentary on the Fair Credit Reporting Act, § 610—Conditions of Disclosure, ¶ 6 ("The privilege extended by [§ 1681h(e)] does not apply to an action brought by a consumer if the action is based on information not disclosed pursuant to sections [1681g, 1681h, or 1681m].").

### III.

Defendants object to the civil conspiracy claim on two grounds. First, they argue that, based on the aforementioned reasons, there are no unlawful acts underlying the alleged conspiracy. Because the Court finds that Plaintiff has stated colorable claims for relief under the FCRA and of intrusion upon seclusion, potential unlawful acts do exist.

■ Defendants also plead the one-year statute of limitation for Kentucky conspiracy claims in the same manner they plead the federal two-year statute for the FCRA claim. *See* Ky.Rev.Stat.Ann. § 413.140(1)(c) (Michie 1992 & Supp.1998). Application of that statute suffers from a flaw identical to the federal one: Kentucky law recognizes the equitable tolling principle. "Under [Kentucky's] 'discovery rule,' a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Hazel v. General Motors Corp.,* 863 F.Supp. 435, 438 (W.D.Ky.1994); *see also Perkins v. Northeastern Log Homes,* 808 S.W.2d 809, 818–19 (Ky.1991). As the Court has already determined above, Plaintiff did not fail to exercise "reasonable diligence" by not spontaneously checking his credit report within two years of the alleged civil conspiracy. Therefore, the one-year stat-

ute of limitation does not toll until Plaintiff's discovery, and this suit is timely.

### IV.

Finally, Defendant argues that Plaintiff's breach of contract count fails to state a claim. The contract at issue is the service agreement between M & R and TUC for the request and delivery of credit reports. Plaintiff claims that he is a third-party beneficiary of the contract and, as such, entitled to damages for its breach. Defendant counters that subjects of the credit reports are not intended beneficiaries of the contract. There are three provisions in the service agreement that concern protection of consumers subject to credit reports:

**A.  THE SUBSCRIBER AGREES:**

1.  To comply with all provisions of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.).

. . .

5.  To request information only for the Subscriber's exclusive use, and the Subscriber certifies that inquiries will be made only for the following purposes that are checked, and no other purpose:

> . . .

> d.  In connection with a business transaction involving the consumer; and the Subscriber agrees to identify to Trans Union each request for this purpose at the time such report is ordered, and to specify the business purpose for such report.

> . . .

> (THE FAIR CREDIT REPORTING ACT PROVIDES THAT ANY PERSON WHO KNOWINGLY AND WILLFULLY OBTAINS INFORMATION ON A CONSUMER FROM A CONSUMER REPORTING AGENCY UNDER FALSE PRETENSES SHALL BE FINED NOT MORE THAN $5,000, OR IMPRISONED NOT MORE THAN ONE YEAR, OR BOTH.).

6. To hold in strict confidence all information received from Trans Union and not to disclose such information, under any circumstances, to the subject of the report, or any other party.

Trans Union Service Agreement (undated), ¶¶ 1, 5(d), 6.

In Kentucky, the standard for proceeding as a third-party beneficiary is well known: "[A]ll that is necessary is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefitting the third party." *Simpson v. JOC Coal, Inc.,* 677 S.W.2d 305, 309 (Ky. 1984). While it is true that M & R's promises regarding retrieval, distribution, and control of consumer information do benefit consumers, the benefits are in no sense "direct." The promises amount to little more than an agreement to obey the FCRA, and they are intended, in the first instance, to instruct M· & R on potential federal liability and to benefit TUC by preventing its own liability for violations by M & R. The indirect benefits flowing to the consumers result primarily from the statute itself, not the service agreement, and do not rise to the level of intended beneficiary status. Therefore, Plaintiff has no claim to proceed as a third-party beneficiary to the contract.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants have moved for judgment on the pleadings. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion is DENIED as to Counts I, II, and III and SUSTAINED as to Count IV.

IT IS FURTHER ORDERED that the stay of discovery entered August 2, 1999, is hereby DISSOLVED. Discovery should proceed without delay. All other pending motions are moot.