**Verien S. WHITESIDES**

v.

**EQUIFAX CREDIT INFORMATION SERVICES, INC., et al.**

**No. CIV. A. NO. 99–0210.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Dec. 4, 2000.

Michael T Lewis, Pauline Shuler Lewis, Christopher Kittell, Lewis & Lewis, Clarksdale, MS, David A Szwak, Mary E Winchell, Bodenheimer Jones & Szwak, Shreveport, LA, for Verien S Whitesides.

Ben Marshall, Jr., Mayer Smith & Roberts, Shreveport, LA, Lewis Perling, Kilpatrick Stockton, Atlanta, GA, for Equifax Credit Information Services Inc.

Jefferson R Tillery, Luis Etienne Balart, Jones Walker et al, New Orleans, LA, for C S C Credit Services Inc.

Gordon E Rountree, Sandra P Haynie, Rountree Cox et al, Shreveport, LA, Julie C Jared, Brian A Farlow, Jones Day et al, Dallas, TX, Daniel J McLoon, Jones Day et al, Los Angeles, CA, for Experian Information Solutions Inc.

John S Hodge, Davidson Nix & Jones, Shreveport, LA, Bryan D Marcus, Livonia, MI, for Nailco Salon Marketplace.

Pamela G Nathan, Blanchard Walker et al, Shreveport, LA, David Cromwell, Joseph S Woodley, Pettiette Armand et al, Shreveport, LA, for Bank One Dayton N A.

Henry L Klein, Bank of Louisiana, New Orleans, LA, for Southern States Bank Card Association.

## MEMORANDUM RULING

WALTER, District Judge.

Before this Court is a Motion for Summary Judgment [Doc. 199] filed on behalf of Experian Information Solutions, Inc. ("Experian") pursuant to Federal Rule of Civil Procedure 56. Verien S. Whitesides ("plaintiff") opposes the motion [Doc. 223]. For the reasons assigned herein, Experian's Motion for Summary Judgment is DENIED.

1. Whitesides has provided the court with three Experian-created credit reports dated November 14, 1997, February 11, 1998, and January 25, 1999. Each of the three reports refers to the Nailco account, which was opened on June 13, 1996. In reference to the

## STATEMENT OF THE CASE

In August, 1996, Whitesides discovered that she had been the victim of credit card fraud when she received notification from Home Depot regarding a delinquent account. Realizing that she had never opened such account, Whitesides immediately took action. She contacted the Credit Bureau of Greater Shreveport and requested a copy of her credit report from TRW, a national consumer reporting agency. Upon receipt of the report, Whitesides recognized that several other fraudulent accounts had been opened in her name. She quickly notified each of the vendors to report the problem. In addition, she contacted TRW again, this time to report that fraudulent activity had taken place on her account. Although Whitesides took steps to rectify the credit fraud in 1996, her credit report, as recently as January, 1999, continued to state that certain accounts were "seriously past due" and had been "written off as a loss." In particular, an account opened with Nailco, a seller of health and beauty supplies, reflected these inaccuracies.[1]

While Whitesides was attempting to resolve the credit debacle, she had applied for credit/loans for herself from several sources. However, potential creditors either denied and/or delayed her applications due to the continued reporting of fraudulent accounts on her credit report, such as the Nailco account. Citibank twice denied Whitesides's application for credit. On February 25, 1997, Citibank stated that the application had been rejected because of "delinquent credit obligations" as stated in a TRW Credit Report. On March 10, 1998, Citibank again rejected her application, again for the same stated reasons. On December 18, 1998, Student Loan Servicing Center ("SLSC") denied White-

account, each report notes that $1,106 has been "charged off." In addition, the reports state that "[a]s of 1997, this account is seriously past due and written off as a loss. Previously was 120 days past due."

sides's application for a PrepGate Family Loan. SLSC attributed the denial to the fact that her credit report had shown "Charge Off Account(s)." In addition, Whitesides also reports that several other merchants also denied her applications for credit during this same time period, namely the period post January 1997.[2]

In the current action, Whitesides brings the following claims against Experian: (1) negligence; (2) defamation; (3) intentional infliction of emotional distress; (4) violations of the Fair Credit Reporting Act ("FCRA"), including a request for punitive damages; and (5) breach of contract. Experian seeks summary judgment on all claims on the following grounds: (1) Experian cannot be held liable for the actions of TRW; (2) claims arising out of conduct occurring before January 5, 1997 are time-barred; (3) failure to establish malice or willful intent; and (4) as a matter of law, Experian is not liable to plaintiff for punitive damages.

### SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.*

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston,* 163 F.3d 309 (5th Cir.1999). The moving party is not required to negate the elements of the non-moving party's case. *Lawrence,* 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. *Id.*

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no

---

**2.** Whitesides claims that Schumpert FCU denied her credit in April, 1997, that AT & T Wireless denied her credit in April, 1997, that Holmes/Honda HNB denied her credit in January, 1998 and that Countrywide denied her credit in April, 1998. Each denial of credit allegedly resulted from Experian's continued reporting of fraudulent accounts on Whiteside's Experian credit report. *See Plaintiff's Opposition* at 6–10.

genuine issue to be tried. Local Rule 56.2W requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2W.

## ANALYSIS

### *Experian cannot be held liable for the actions of TRW*

Whitesides first realized that she had been the victim of credit fraud in August, 1996. At that time, the corporate entity known as Experian did not exist. It was not until September, 1996 that Experian came into being, when two groups of investors purchased TRW and formed Experian. Being that Experian was not created until after the credit fraud occurred, Experian argues that it cannot be held liable for any of Whitesides's current claims.

Reserving the question of whether Experian is the "successor" of TRW, Experian fails to recognize that Whitesides, in large part, relies upon Experian-created credit reports in bringing these claims. Three Experian-created credit reports dated November 14, 1997, February 11, 1998, and January 25, 1999, all of which wrongfully included the Nailco account as an account held by the plaintiff, form the basis for the current action. If these reports, issued to potential creditors, led to the harm alleged by Whitesides, then this Court need not determine whether Experian is the successor to TRW. Therefore, the Court reserves any determination on this issue.

### *Claims arising out of conduct occurring before January 5, 1997 are time-barred*

Section 1681p of the FCRA maintains that,

> Jurisdiction of courts; limitation of actions. An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises ... 15 U.S.C. § 1681p. (2000).

█ Experian notes that "the [two year] limitations period for a negligence claim under the FCRA commences when the consumer report causes injury to the consumer, or the date upon which a credit grantor, relied upon a Experian credit report, denied plaintiff credit." *Experian's Motion for Summary Judgment* at 11 (citing *Hyde v. Hibernia National Bank*, 861 F.2d 446, 449 (5th Cir.1988)). The Court concurs with Experian's assertion and adds that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." *Hyde*, 861 F.2d at 450. Therefore, each time a potential creditor requested Whitesides's credit report and each time credit was denied based upon an Experian reporting error, the statute of limitations began to run anew for each potential harm. Whitesides argues that at least six potential creditors denied her access to credit based on erroneous Experian credit reports. *See Plaintiff's Opposition* at 6–10. Each of these denials occurred after January 5, 1997. Therefore, while Experian is correct in pointing out that negligence claims arising out of conduct occurring prior to January 5, 1997 are time barred, no such claims have been alleged in this action. Therefore, the two year statute of limitations does not provide a basis upon which to dismiss any of the Whitesides's claims.

### *Failure to Establish Malice or Wilful Intent*

15 U.S.C. § 1681h(e) states that,

> Limitation on Liability. Except as provided in sections 1681n and 1681o of this title, no consumer may bring any

action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e) (2000).

Experian argues that 1681h(e) precludes Whitesides's claims for defamation, invasion of privacy and various other unidentified state and common law claims. Experian asserts that the qualified immunity granted by 1681h(e) protects them from liability absent proof of malice or willful intent to injure the consumer. Experian argues that plaintiff has failed to proffer evidence of malice or willful intent to injure the plaintiff, a fortiori, Experian is shielded by the qualified immunity of 1681h(e).

■■■ Experian properly notes that 1681h(e) affords consumer reporting agencies with qualified immunity. Indeed, section 1681h(e) "is a quid pro quo grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures under state tort law. It makes sense that acts required to be done by the FCRA are immunized from state tort liability." *McAnly v. Middleton and Reutlinger, P.S.C.*, 77 F.Supp.2d 810, 814 (W.D.Ky.1999); *see also Yeager v. TRW, Inc.*, 984 F.Supp. 517 (E.D.Tx.1997). However, 1681h(e) only awards immunity for disclosures made pursuant to 1681g, 1681h and 1681m. Sections 1681g and 1681h govern disclosures made by a consumer reporting agency to the consumer, when the consumer requests his/her own credit report. Section 1681m governs the disclosures to be made to the consumer when a user of credit information has taken adverse action against the consumer. Experian's disclosure of Whitesides's credit report to potential creditors does not qualify as a disclosure under any of these three sections. Therefore, Whitesides need not prove malice/willful intent in pursuing her claims for defamation and invasion of privacy. As a result, Experian's motion for summary judgment based on Whiteside's alleged failure to demonstrate malice/willful intent is denied.

## As a matter of law, Experian is not liable to plaintiff for punitive damages

Section 1681n provides that "[a]ny person who *willfully fails* to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of [actual damages] [and] (2) such amount of punitive damages as the court may allow." 15 U.S.C. § 1681m (2000)(emphasis added). Experian argues that, as a matter of law, Whitesides cannot recover punitive damages under section 1681n because she has failed to prove that Experian willfully violated the FCRA. In support of its contention, Experian points to several facts, including Whitesides's own deposition, wherein she stated that she does not believe Experian singled her out or applied different procedures to her case. *See Experian's Motion for Summary Judgment* at 15–6.

■■■ In order for a plaintiff to demonstrate willful noncompliance with the FCRA, the "plaintiff must show more than that the CRA [consumer reporting agency] failed to investigate adequately and correct inaccurate information contained in a consumer report." *Matise v. Trans Union Corp.*, 1998 WL 872511 at *6 (N.D.Tx.1998)(citing *Stevenson v. TRW*

*Inc.,* 987 F.2d 288, 294 (5th Cir.1993)). The plaintiff must also show that the defendant engaged in "willful misrepresentations or concealments." *Id.* However, "it is not necessary for the plaintiff to produce a 'smoking gun' or other form of definitive proof of the defendant's malicious intent ... the trier of fact may deduce it from the surrounding circumstance." *Cushman v. Trans Union Corp.,* 920 F.Supp. 80, 84 (E.D.Pa.1996). In *Cushman,* the court noted that the plaintiff had produced evidence that she had twice informed the consumer reporting agency of inaccuracies within her credit report; however, the consumer reporting agency failed to take action. As a result, the *Cushman* court concluded that a jury could reasonably conclude that the defendant's actions were willful. *See id.* In this case, Whitesides repeatedly notified Experian of the reporting errors, but the errors continued to appear, years after originally notifying Experian. As a result, a question of fact remains as to whether Experian willfully failed to comply with the FCRA. Therefore, Experian's motion for summary judgment as to plaintiff's claim for punitive damages is denied.