**Verien S. WHITESIDES**

v.

**EQUIFAX CREDIT INFORMATION SERVICES, INC., et al.**

**No. CIV. A. NO. 99–0210.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Dec. 4, 2000.

---

David A. Szwak, Mary E. Winchell, Shreveport, LA, for Verien Whitesides.

Dan McLoon, Brian Farlow, Dallas, TX, for Experian Information Solutions, Inc.

Henry Klein, New Orleans, LA, for Bank of Louisiana.

## MEMORANDUM RULING

WALTER, District Judge.

Before this Court is a Motion for Summary Judgment [Doc. 196] filed on behalf of Bank of Louisiana ("BOL") pursuant to Federal Rule of Civil Procedure 56. Verien S. Whitesides ("plaintiff") opposes the motion [Doc. 196]. For the reasons assigned herein, BOL's Motion for Summary Judgment is **DENIED.**

## STATEMENT OF THE CASE

In August, 1996, Whitesides discovered that she had been the victim of credit card fraud when she received notification from Home Depot regarding a delinquent account. Realizing that she had never opened such account, Whitesides immediately took action. She contacted the Credit Bureau of Greater Shreveport and requested a copy of her credit report from TRW, a national consumer reporting agency. Upon receipt of the report, Whitesides recognized that several other fraudulent accounts had been opened in her name. She quickly began to contact each of the vendors to report the problem. However, one past account did not appear on the initial report, an account held by Nailco, a supplier of health and beauty goods. Bank of Louisiana, a financial organization in the business of issuing private label credit cards for individual merchants, extended the credit for the Nailco account. Whitesides discovered the overdue Nailco account when she received an invoice for $1090.15 from BOL on December 15, 1996.

After receiving the invoice, Whitesides contacted BOL's fraud department to advise them that the past due account was in fact a fraud and requested that BOL immediately advise the major consumer reporting agencies (e.g. TRW, Equifax, TransUnion) of the error. BOL responded, asking that Whitesides produce of a copy of her police report of the fraud and requesting that Whitesides sign a "fraud affidavit" attesting to the fact that fraud had been committed on her account.[1] In addition, BOL states that it "sent the Universal Fraud Account Form to Experian and the other bureaus, advising the bureaus of the fraud claim." *See BOL's Motion for Summary Judgment* at 2–3. Although BOL allegedly sent the fraud notice on December 26, 1996,[2] Whitesides received additional billing statements from BOL in both January and February of 1997.[3] Finally, in April, 1997, Whitesides received a statement regarding the account with a zero balance.

While Whitesides was attempting to resolve the credit debacle with BOL, she had applied for credit/loans for herself from at least two other sources, namely Citibank and Student Loan Servicing Center. However, each source denied her application. Citibank twice denied Whitesides's application for credit. On February 25, 1997, Citibank stated that the application had been rejected because of "delinquent credit obligations" as stated in a TRW Credit

---

1. Whitesides refused to sign the fraud affidavit because she refused to state that fraud had been committed on *her* account. Being that she did not open the account, she was unwillingly to state that the account belonged to her. Her refusal did not stem from the fact that she was unwillingly to state that fraud had in fact occurred.

2. BOL claims to have sent the fraud notice to Experian Information Solutions, Inc. (a consumer reporting agency). However, Experian, also a defendant in this action, refutes this fact. *See Experian's Opposition to BOL's Motion for Summary Judgment.*

3. Apparently, Whitesides continued to be billed by BOL because she had yet to cooperate with their requests to investigate the fraud claim. In particular, her refusal to sign their "fraud affidavit" led to the delay. *See BOL's Motion for Summary Judgment* at 3.

Report. *See Plaintiff's Opposition, Exhibit 8.* On March 10, 1998, Citibank again rejected her application, again for the same stated reasons. *See Plaintiff's Opposition, Exhibit 10.* On December 18, 1998, Student Loan Servicing Center ("SLSC") denied Whitesides's application for a PrepGate Family Loan. *See Plaintiff's Opposition, Exhibit 11.* SLSC attributed the denial to the fact that her credit report had shown "Charge Off Account(s)." The account referenced by each potential creditor was the Nailco/BOL account. Although BOL had "zeroed" the account in April, 1997, the account continued to appear on Whitesides's credit report with such notations as "seriously past due" and "written off as a loss" as recently as January, 1999, the time when the current action was filed.

In the current action, Whitesides brings the following claims against BOL: (1) negligence; (2) defamation; (3) intentional infliction of emotional distress; (4) unfair trade practices and (5) violation of 15 U.S.C. § 1681s–2(b). BOL contends that Whitesides's action is effectively barred by the Fair Credit Reporting Act ("FCRA") and thus has moved for summary judgment. In particular, BOL asserts that Whitesides's claims are precluded for the following reasons: (1) failure to establish malice or wilful intent; (2) prescription; and (3) inapplicability of FCRA to BOL.

### SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.*

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston,* 163 F.3d 309 (5th Cir.1999). The moving party is not required to negate the elements of the non-moving party's case. *Lawrence,* 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. *Id.*

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no

genuine issue to be tried. Local Rule 56.2W requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2W.

### ANALYSIS

#### Failure to Establish Malice or Wilful Intent

15 U.S.C. § 1681h(e) states that,

(e) Limitation on Liability. Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer. 15 U.S.C. § 1681h(e) (2000).

■ BOL, in interpreting 1681h(e), argues that "[i]n order to pursue her claims, Whitesides must prove that BOL acted with malice or willful intent to injure." See BOL's Motion for Summary Judgment at 4. However, Whiteside's claims are not "based on information disclosed pursuant to 1681g, 1681h, or 1681m." Disclosures made in accordance with 1681g and 1681h refer only to consumer reporting agencies; BOL is not a consumer reporting agency and therefore does not fall within the scope of either of these two sections. Section 1681m shields certain disclosures made after a user of credit information takes "adverse action" against a consumer. There was no adverse action taken by BOL against Whitesides based on her consumer report. Therefore, 1681m is inapplicable as well.

■ "§ 1681h(e) is not actually a preemption provision. Rather, it is a quid pro quo grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures under state tort law. It makes sense that acts required to be done by the FCRA are immunized from state tort liability." McAnly v. Middleton and Reutlinger, P.S.C., 77 F.Supp.2d 810, 814 (W.D.Ky. 1999); see also Yeager v. TRW, Inc., 984 F.Supp. 517 (E.D.Tex.1997). However, the acts of BOL, particularly the reporting of the Whitesides account to consumer reporting agencies, do not fall within the ambit of disclosures considered by 1681h(e). Therefore, the necessity of malice or willful intent is obviated. Accordingly, 1681h(e) does not preclude any of Whitesides's claims.

#### Whitesides's claims have prescribed for failure to bring this action within the two-year statute of limitations

Section 1681p of the FCRA maintains that,

Jurisdiction of courts; limitation of actions. An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises ... 15 U.S.C. § 1681p. (2000).

BOL argues that "[a]ssuming ... that BOL was guilty of some misdeed, Whitesides was well aware [4] of all of the circumstances surrounding the fraud and the impact of reporting the delinquent accounts by mid–1996, and certainly by the time BOL charged the account back to Nailco in February of 1997." *BOL's Motion for Summary Judgment* at 7. Being that Whitesides did not file suit until January, 1999, two and a half years after first discovering the fraud, BOL contends that she is now precluded from asserting her claims at this late date.

■ In support of its prescription argument, BOL relies upon *Hyde v. Hibernia National Bank*, 861 F.2d 446 (5th Cir. 1988), to illustrate that while a harm may have been committed when the initial erroneous credit report was issued, such harm is not renewed upon each subsequent publication of the erroneous report. *See BOL's Motion for Summary Judgment* at 9. However, BOL failed to cite the very next paragraph of the *Hyde* opinion, wherein the Fifth Circuit states that "[w]e do not find the rationale underlying the single publication rule applicable to the Fair Credit Reporting Act." *Id.* at 450. Indeed, "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." *Id.* Therefore, each time a potential creditor requested Whitesides's credit report and each time credit was denied based upon the outstanding Nailco account, the statute of limitations began to run anew for each potential harm. The two Citibank denials of credit, in February, 1997 and March, 1998, respectively, and the SLSC denial of credit, in December, 1998, form the foundation for potential BOL violations of the FCRA. As each of these harms occurred within two years of Whitesides's filing of the current action, her claims against BOL are not time-barred by the two year FCRA statute of limitations.

### Inapplicability of FCRA claims to BOL

■ Section 1681s–2(b) delineates the duties of furnishers of credit information, such as BOL, after a consumer reporting agency, such as Experian, has notified the furnisher [5] that the consumer disputes credit information provided by the furnisher to the consumer reporting agency. The furnisher, upon receiving such notice, is to conduct an investigation with respect to the disputed information and report the results of the investigation to the appropriate consumer reporting agencies. If the furnisher does not comply with the provisions of 1681s–2(b), the consumer may bring a cause of action against the furnisher for either willful or negligent noncompliance.

■ BOL acknowledges the duties mandated by 1681s–2(b), but asserts such duties are not applicable in this case because 1681s–2 did not become effective until September 30, 1997. While it is true that the statute became effective after the 1996 credit fraud occurred, the Nailco account continued to appear on Experian credit reports as late as January, 1999. Therefore, a question of fact arises as to whether BOL discharged its statutory obligations after the statute became effective. BOL also points out that it had already credited back the delinquent Nailco account in April, 1997 and therefore cannot

---

4. BOL insinuates that Whitesides must somehow be held to a higher standard of awareness because she "surrounded herself with lawyer friends and judges in 1996." *BOL's Motion for Summary Judgment* at 8. The Court has found no support for such a proposition.

5. As a predicate to furnisher liability, 1681s–2(b) requires that a consumer reporting agency notify the furnisher that the consumer disputes information provided by the furnisher to the consumer reporting agency. In this case, it is currently unknown whether Equifax, or any other consumer reporting agency, reported the alleged fraud on the Nailco account to BOL. However, it is clear that Whitesides herself did notify BOL via letter on December 19, 1996. *See Plaintiff's Opposition, Exhibit 5.*

be held liable under this section. However, simply crediting the account back to a zero balance does not fulfill the obligations of 1681s–2(b), particularly if BOL continued to give erroneous information to consumer reporting agencies after discovering the credit fraud.

BOL argues that "the subsequent appearance of the account on the credit reports issued by consumer reporting agencies does not create a genuine issue as to BOL's liability regarding its report of the account." *See BOL's Motion for Summary Judgment* at 10(*relying on Rhodes v. Ford Motor Credit Co.*, 951 F.2d 905 (8th Cir.1991)). In *Rhodes*, the Ford Motor Credit Co. ("FMCC") mistakenly reported an overdue account to a consumer reporting agency, when in fact, the account was in good standing. In an effort to rectify its error, FMCC credited the account to reflect the correct balance, apologized to the consumer and *notified the consumer reporting agency regarding the error.* Plaintiff Rhodes submitted no evidence to counter FMCC's assertion that it had properly informed the consumer reporting agency of the error. Therefore, the Eighth Circuit reasonably concluded that the plaintiff's "claim that FMCC subsequently transmitted the false information is merely an inference from the fact that the other reporting agencies possessed the [false] information at later dates." *Rhodes*, 951 F.2d at 907. As a result, the Eighth Circuit affirmed the decision in favor of FMCC.

In this case, there is a factual dispute as to whether BOL ever properly notified Experian, or any other consumer reporting agency, regarding the alleged fraud on Whitesides's account. BOL states that "[o]n December 26, 1996, BOL sent the Universal Fraud Account Form ["UFIF"] to Experian and the other bureaus, advising the bureaus of the fraud claim." Yet, Experian has rejected this contention, stating that "it never received the December UFIF from BOL." *See Experian's Opposition to BOL's Motion for Summary*

*Judgment* at 2. Unlike the Eighth Circuit's conclusion in *Rhodes*, the inference herein lies not only in the fact that credit reporting agencies published erroneous information as recently as January, 1999, *but also* from the fact that BOL may not have effectively discharged its duties pursuant to 1681s–2(b). Therefore, material issues of fact remain as to BOL's potential liability under the FCRA, making summary judgment inappropriate at this time.